IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RAMONA ADAMEC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NANCY A. BERRYHILL, Acting ) <br> Commissioner of Social Security,[1] ) <br> ) <br> Defendant. ) <br> ) | No. 15 C 11811 <br><br> Magistrate Judge <br> Maria Valdez |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Ramona Adamec's claims for Disability Insurance Benefits. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [Doc. No. 8] is denied.

## BACKGROUND[2]

### I. PROCEDURAL HISTORY

On March 26, 2012, Adamec filed a claim for disability benefits, alleging disability since March 12, 2011[3] due to fibromyalgia, chronic pain syndrome, depression, anxiety, and post-traumatic stress disorder. The claim was denied initially and upon reconsideration, after which she timely requested a hearing

---

[1] Nancy A. Berryhill is substituted for her predecessor pursuant to Federal Rule of Civil Procedure 25(d).
[2] All facts from the briefs are undisputed unless otherwise noted.
[3] Plaintiff's disability onset date was later amended by counsel to February 15, 2012.

before an Administrative Law Judge ("ALJ"), which was held on November 14, 2013. Plaintiff personally appeared and testified at the hearing and was represented by counsel. Medical expert ("ME") Dr. Ashok Jilhewar, psychological ME Dr. O'Brien, and vocational expert ("VE") Aimee Mowery also testified.

On June 27, 2014, the ALJ denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. ALJ DECISION

The ALJ found at step one that Adamec had not engaged in substantial gainful activity since her alleged onset date of February 15, 2012. At step two, the ALJ concluded that Plaintiff had severe impairments of chronic pain syndrome in her right foot and impaired social functioning due to depression and anxiety. The ALJ concluded at step three that her impairments, alone or in combination, do not meet or medically equal a Listing. The ALJ then determined that Adamec retained the RFC to perform unskilled, sedentary work, namely work that did not entail: more than frequent listing up to ten pounds; pushing or pulling with the upper extremities; sitting for more than six hours in an eight-hour workday; more than occasional operation of foot controls with the right lower extremity; climbing ropes, ladders, or scaffolds; more than occasionally climbing ramps and stairs, balancing,

2

stooping, crouching, crawling, or kneeling; working around hazards; understanding or remembering detailed or complex instructions; carrying out detailed or complex tasks; or having more than occasional contact with supervisors, co-workers or members of the public. At step four, the ALJ found that Adamec is unable to perform any of her past relevant work, the majority of which was skilled sedentary. At step five, based upon the VE's testimony and Adamec's age, education, work experience and RFC, the ALJ concluded that Plaintiff can perform jobs existing in significant numbers in the national economy, leading to a finding that she is not disabled under the Social Security Act.

## **DISCUSSION**

### I.  ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a Plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the Plaintiff presently unemployed? (2) Does the Plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the Plaintiff unable to perform her former occupation? and (5) Is the Plaintiff unable to perform any other work?  20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the Plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The Plaintiff bears the burden of proof at steps 1–4. *Id.* Once the Plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the Plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a Plaintiff, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a Plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

## III. ANALYSIS

Adamec argues that the ALJ's decision was in error because: (1) it offered two different RFC assessments, neither of which was consistent with the limitations stated by the testifying medical experts; (2) the ALJ improperly assessed the medical opinions in the record; (3) the credibility assessment was flawed; and (4) the VE's testimony was unsupported.

### A. RFC Assessment

Plaintiff's first argument against the RFC can be dispensed with quickly. She claims that the ALJ made an initial determination that she can work at the light level, then later determined she was limited to sedentary work, and "[t]his internal inconsistency in the ALJ's findings, in and of itself, invalidates the ALJ's ultimate determination – that Plaintiff can perform a 'wide variety' of other work." (Pl.'s Mem. at 7.) As Defendant points out, the header of the RFC section, which states: "The claimant has the residual functional capacity to perform a range of unskilled, light work," (R. 24), is obviously a typographical error. The ALJ made only one RFC determination, which was "unskilled, sedentary work." (R. 30.) The postural and other limitations found by the ALJ are only consistent with unskilled, sedentary positions.[4] Moreover, even if the ALJ had performed two separate RFC analyses, his

---

[4] Plaintiff claims that the detailed text enumerating her limitations "only adds to the confusion" because the ALJ "appeared to cut back on the . . . restrictions he supposedly adopted. He seemed to state Plaintiff was capable of *more than frequent* lifting of certain weights, for example, or sitting for *more than* six hours . . ." (Pl.'s Mem. at 7) (emphasis in original). Plaintiff has misread those limitations, which clearly state that she "had the capacity to perform the exertional and nonexertional requirements of work *except for* more than frequently lifting up to 10 pounds at a time . . ." (R. 30) (emphasis added).

6

ultimate conclusion – that significant numbers of jobs existed under the more restrictive unskilled, sedentary RFC – would make any such error harmless.

Plaintiff next complains that the RFC did not include all of her limitations supported by the record. First, she notes the testimony of ME Dr. Jilhewar, who offered that if missing treatment records documented delayed healing of her right metatarsal bone, she would meet Listing 1.06. Dr. Jilhewar also suggested her impairments in combination might equal the listing, but he did not have documentation of fibromyalgia syndrome, including diagnosis and severity of symptoms. However, she does not point to any later-filed records demonstrating delayed healing of the foot. And her citations to the later-filed records from treating rheumatologist Dr. Katz in support of the fibromyalgia diagnosis and symptomology merely state "FMS" on March 22, 2012, (R. 478) and "FM – chronic active" on July 31, 2012, (R. 475). At the time he testified, Dr. Jilhewar was already aware that Dr. Katz said that Plaintiff had fibromyalgia, which he opined made her unable to work. (R. 422.) Plaintiff has not offered the Court any new evidence to support her argument that she meets a listing under Dr. Jilhewar's hypothetical analysis, which sought information related to the severity of the syndrome and its symptoms.

Plaintiff also argues that the mental limitations included in the ALJ's RFC are inconsistent with the testimony of the psychological ME, noting that Dr. O'Brien limited her to "no more than occasional contact with the public, peers, and supervisors." (R. 54.) It is entirely unclear what mental limitations Plaintiff alleges were not included; the RFC expressly provides that she was to have no more than

7

"occasional contact with supervisors, coworkers, or members of the public." (R. 30.) Plaintiff's other argument related to Dr. O'Brien's testimony is based upon a misunderstanding. She maintains that Dr. O'Brien "noted the absence of relevant psychological evaluations in the record and suggested there appear to be 'a whole lot of other records we've never looked at' that would be essential to a proper assessment of Plaintiff's limitations." (Pl.'s Mem. at 8.) While Plaintiff correctly observes that there was very little psychological documentation, she grossly mischaracterizes the testimony related to the "other records." Dr. O'Brien did not suggest in any way that there were missing psychological records. To the contrary, when asked by the ALJ whether Plaintiff's testimony about her mental impairments was consistent with the medical evidence, she responded that it could be related to fibromyalgia, but continued with the question: "Or is there a whole lot of other records we've never looked at that would build along to a case that I don't see in this record?" (R. 74.) Indeed, it would be incredible to believe that Dr. O'Brien, merely a testifying expert, would have any inside knowledge as to whether additional documentation exists other than the record she reviewed. Plaintiff's brief fails to list any mental limitations that were not included in the RFC, let alone show that those limitations were supported by the actual record before the ALJ.

### B. <u>Assessment of Medical Evidence</u>

Plaintiff first faults the ALJ for noting that "[t]reating clinicians . . . have an ethical obligation to be supportive of their patients. Thus, it is not inappropriate for them to report – without comment – the symptoms and functional limitations

8

reported to them by their patients in completing forms requested by the claimant or the Administration." (R. 28.) According to Plaintiff, this statement "plant[ed] this idea of false reporting," which he found confusing, as the ALJ did "acknowledge[ ] that Plaintiff's treating rheumatologist did *not*, in fact, do this." (Pl.'s Mem. at 9.) The Court does not fault the ALJ for including this statement in his analysis of Dr. Katz's opinion, as it reflects well settled Seventh Circuit law. *See Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir. 1985) ("The patient's regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find disability."); *see also Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) (explaining that a treater's opinion "may also be unreliable if the doctor is sympathetic with the patient" and concluding that if the opinion is "based solely on the patient's subjective complaints, the ALJ may discount it").

Plaintiff next contends that the ALJ improperly applied the treating physician rule in weighing Dr. Katz's opinion. An ALJ must give controlling weight to a treating physician's opinion if the opinion is both "well-supported" and "not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. § 404.1527(c); *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). The ALJ must also "offer good reasons for discounting" the opinion of a treating physician. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations omitted); *Scott*, 647 F.3d at 739. The regulations require the ALJ to consider a variety of factors, including: (1) the length, nature, and extent of the treatment relationship;

(2) the frequency of examination; (3) the physician's specialty; (4) the types of tests performed; and (5) the consistency and support for the physician's opinion. *See id.*

The ALJ noted that Dr. Katz had seen Plaintiff several times over the span of four months and provided a general "To Whom It May Concern" note on May 4, 2012, which stated: "Mrs. Adamec is under my care. Due to her fibromyalgia, she is currently unable to work. We will continue to evaluate patient." (R. 422.) He found that under the circumstances, it was necessary to compare this type of report with the functional limitations noted in contemporaneous treatment records in order to evaluate her application for benefits. The ALJ detailed the treating relationship, which lasted from February through July 2012 and explained that Dr. Katz tried to obtain laboratory data to establish a cause of her symptoms. The ALJ pointed out that Dr. Katz did not perform function-by-function analysis of Plaintiff's limitations, and his progress notes do not describe her activities of daily living. Accordingly, the only gave Dr. Katz's opinion some weight.

In its criticism of the ALJ's treating physician analysis, Plaintiff's brief mischaracterizes the assessment and offers no basis to disturb the conclusion. First, Plaintiff reads the ALJ's mind, claiming that "the ALJ seemed to determine that [the five-month treating relationship] did not entitle Dr. Katz's opinion to any greater weight than that of a non-treater," (Pl.'s Mem. at 10), while nothing in the decision suggests that the ALJ made any such determination. Second, while the ALJ mentioned that Dr. Katz did seek laboratory data, the lack of data by itself was not, as Plaintiff argues, "cited . . . as a reason to reject Dr. Katz's diagnosis of

fibromyalgia." (*Id.*) The diagnosis was rejected as it was not supported by any clinical evidence at all. Significantly, Plaintiff cites SSR 12-2p[5] to show that there is often no objective evidence of fibromyalgia, but that is simply not what the SSR says. The SSR explains that "[a]s in all claims for disability benefits, we need objective medical evidence to establish the presence of an MDI [medically determinable impairment]." SSR 12-2p at III.A.1. The SSR goes on to explain that a diagnosis of fibromyalgia must be accompanied by evidence supporting the existence of specific listed criteria. *Id.* at II. Only *after* a medically determinable impairment is established with objective medical evidence can a person use other, non-objective evidence to show "the intensity, persistence, and functionally limiting effects of symptoms," if the objective evidence does not substantiate the person's claims. *Id.* at IV.B. Plaintiff's brief points to no objective evidence supporting the fibromyalgia diagnosis whatsoever, and she certainly has not established that the SSR 12-2p criteria have been met. The first reference to fibromyalgia is a February 21, 2012 treatment note with Dr. Katz, in which he quotes Plaintiff as asking, "'Do I have FM.' Requested Elavil." (R. 479); subsequent treatment notes reflect a diagnosis of "FMS" or "FM" without any other clinical notes listing the basis for the diagnosis, (R. 475-78). Therefore, even if the ALJ had credited Dr. Katz's opinion *in toto*, that would not have put into the record objective evidence supporting a fibromyalgia diagnosis. Accordingly, the Court cannot conclude that his determination was not supported by substantial evidence.

---

[5] Interpretive rules, such as Social Security Regulations ("SSR"), do not have force of law but are binding on all components of the Agency. 20 C.F.R. § 402.35(b)(1); *accord Lauer v. Apfel*, 169 F.3d 489, 492 (7th Cir. 1999).

11

## C. Credibility

Plaintiff contends that the ALJ's credibility assessment was based upon improper and unsupported inferences. As an initial matter, the Court notes that last year, the Administration updated its guidance about evaluating symptoms in disability claims. *See* SSR 16-3p, 2016 WL 1119029 (effective Mar. 28, 2016). The new ruling eliminates the term "credibility" from the Administration's sub-regulatory policies to "clarify that subjective symptom evaluation is not an examination of the individual's character." *Id.* at *1. Though SSR 16-3p post-dates the ALJ hearing in this case, the application of a new regulation to matters on appeal is appropriate where the new regulation is a clarification of, rather than a change to, existing law. *Pope v. Shalala*, 998 F.2d 473, 482-483 (7th Cir. 1993) (overruled on other grounds by *Johnson v. Apfel*, 189 F.3d 561 (7th Cir. 1999)). In determining whether a new rule constitutes a clarification or a change, courts give "great weight" to the stated "intent and interpretation of the promulgating agency." *Id.* at 483. Though a statement of intent is not dispositive, courts defer to an agency's expressed intent to "clarify" a regulation "unless the prior interpretation…is patently inconsistent with the later one." *Id.; see also First Nat'l Bank of Chi. v. Standard Bank & Tr.,* 172 F.3d 472, 479 (7th Cir. 1999), *Homemakers N. Shore, Inc. v. Bowen,* 832 F.2d 408 (7th Cir. 1987).

Here, the Administration has specified that its new Social Security Ruling is intended to "clarify" its application of existing rules and to "more closely follow our regulatory language regarding symptom evaluation." SSR 16-3p, 2016 WL 1119029

at *1; *see* 20 C.F.R. §§ 404.1529, 416.929. Moreover, the two Social Security Rulings are not patently inconsistent. Indeed, a comparison of the two reveals substantial consistency, both in the two-step process to be followed and in the factors to be considered in determining the intensity and persistence of a party's symptoms. *Compare* SSR 16-3p *and* SSR 96-7p. Stated differently, "[t]he agency has had only one position, although it has expressed that position in different words." *Homemakers*, 832 F.2d at 413. Therefore, it is appropriate to evaluate Plaintiff's credibility argument in light of the new guidance the Administration has provided.

Step 1 of the SSR requires a determination of "whether the claimant has a medically determinable impairment (MDI) that could reasonably be expected to produce the individual's alleged symptoms." SSR 16-3p, 2016 WL 1119029 at *3. In this case, Adamec's MDIs are chronic right foot pain, depression, and anxiety. As stated above, Plaintiff has failed to offer evidence contradicting the ALJ's determination that fibromyalgia is not an MDI, and her reported symptoms of fibromyalgia are not enough to establish the existence of an MDI. *See* SSR 16-3p, 2016 WL 1119029 at *3-4 ("An individual's symptoms, such as pain, fatigue, shortness of breath, weakness, nervousness, or periods of poor concentration will not be found to affect the ability to perform work-related activities . . . unless medical signs or laboratory findings show a medically determinable impairment is present. . . . We will not find an individual disabled based on alleged symptoms alone.").

13

At step 2, the agency is directed to evaluate the intensity and persistence of an individual's symptoms such as pain, and determine the extent to which those symptoms limit the claimant's ability to perform work-related activities. *See* SSR 16-3p, 2016 WL 1119029 at *4.

Although he concluded that her allegations of symptoms are disproportional to the stated impairments, the ALJ did not end his analysis there. The ALJ did not credit Plaintiff's allegations about the frequency and extent of her generalized pain symptoms in part based on her failure to pursue recommended therapy, ranging from invasive blocks or procedures, physical therapy, massage therapy, and exercise. He also noted that she did successfully perform several activities of daily living independently in her third-floor apartment, including preparing simple meals, going out approximately four times per week, driving, spending time with parents and sisters, and attending church weekly. And while Plaintiff testified that her condition has worsened to the point where she did no household chores or shopping, the ALJ noted that the medical evidence established no worsening of any of her medical conditions. Although a different adjudicator may have come to a different conclusion, the Court finds that the ALJ supported his decision with substantial evidence, and it will not be disturbed.

Plaintiff argues that the ALJ impermissibly "play[ed] doctor" by asserting that "there was no evidence of Plaintiff's adverse emotional reaction to pain at the hearing." (Pl.'s Mem. at 12.) But once more, Plaintiff misreads the decision, which states: "That the claimant has experienced an adverse emotional reaction to her

14

physical condition – as well as psychosocial factors – is consistent with her testimony that she traces the onset of her alleged impaired concentration – in no ways evident at the hearing – since she broke her foot." (R. 26.) He *credited* her claim of experiencing an adverse emotional reaction to pain, while noting that he did not observe any impaired concentration caused by that emotional reaction.

Plaintiff's brief, while critical of the ALJ's analysis, fails to offer any evidence supporting her claim that her symptoms cause her to be unable to perform even unskilled, sedentary work-related activities. The record citations she provides are unpersuasive. First, only evidence of disabling pain after the alleged onset date of February 15, 2012 is relevant. Furthermore, many of Plaintiff's complaints of pain, such as back pain and bilateral leg pain, are not associated with a proven MDI and thus do not support a claim of disability. Finally, she has not adequately explained why her foot pain and fatigue are not accommodated by a sedentary RFC.

### D. <u>Vocational Expert Testimony</u>

Finally, Plaintiff argues that remand is necessary because there is no basis for the source or accuracy of the VE's conclusions about the numbers of available jobs in the economy. According to Plaintiff, the ALJ erred by accepting the VE's testimony without question, specifically her reliance on jobs listed in the Dictionary of Occupational Titles ("DOT"), the accuracy of which has been criticized by the

Seventh Circuit.[6] *See, e.g., Voight v. Colvin*, 781 F.3d 871 (7th Cir. 2015); *Browning v. Colvin*, 766 F.3d 702 (7th Cir. 2014).

Although expert standards at an ALJ hearing are less stringent than those under the Federal Rules of Evidence, "an ALJ's findings must be supported by substantial evidence" and thus "an ALJ may depend upon expert testimony only if the testimony is reliable." *McKinnie v. Barnhart*, 368 F.3d 907, 910 (7th Cir. 2004). "A vocational expert is 'free to give a bottom line,' but the data and reasoning underlying that bottom line must be 'available on demand' if the claimant challenges the foundation of the vocational expert's opinions." *Id.* at 911.

First, Plaintiff has waived her DOT argument, because her attorney never challenged the basis of the VE's conclusions about available jobs at the hearing. *See Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004) ("[B]ecause [the plaintiff's] lawyer did not question the basis for the vocational expert's testimony, purely conclusional though that testimony was, any objection to it is forfeited."); *see also Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002) ("When no one questions the vocational expert's foundation or reasoning, an ALJ is entitled to accept the vocational expert's conclusion, even if that conclusion differs from the [DOT] – for the [DOT], after all, just records other unexplained conclusions and is not even subject to cross-examination."). Second, the Seventh Circuit's repeated criticism of the use of the DOT in VE testimony, while pointed, was merely *dicta* and does not merit remand. *See Fitzgerald v. Colvin*, 15 CV 135, 2016 WL 447507, at *11 (W.D.

---

[6] Plaintiff also complains that the ALJ should have offered the VE hypotheticals accounting for limitations in the missing medical records. But as explained above, the missing records did not support any additional limitations, and thus any error would be harmless.

Wis. Feb. 4, 2016) (explaining that neither *Voight* nor *Browning* overruled precedent allowing ALJs to rely on unexplained vocational testimony), citing 20 C.F.R. §§ 404.1566(d) and (e), 416.966(d) and (3) (allowing administrative notice of job information available from the DOT, among other sources).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [Doc. No. 8] is denied, and the Commissioner's decision is affirmed.

**SO ORDERED.**   **ENTERED:**

*[signature: Maria Valdez]*

**DATE:    March 31, 2017**

**HON. MARIA VALDEZ**
**United States Magistrate Judge**